We'd like to reserve a third of my time, please, for rebuttal. It has been noted. Thank you, Your Honor. May it please the court, my name is Stephen Oster. I represent the appellant in this case, George Lutfi. The question is whether it was error for the district court to deny Mr. Lutfi a trial on his personal injury claim against the United States. In the court below, in the state court and the federal court, Mr. Lutfi was alternatively pro se and represented by counsel. At the time of the dismissal below, his then-counsel had determined that she was going to withdraw, and I think that has contributed to a somewhat lack of clarity in the record below. It's a personal injury case. I'm sure the panel is aware of the facts. Briefly, the appellant was injured while at the United States Air Force Memorial in 2006. For purposes of this appeal, I don't think there is any dispute that the United States was in control of the parking lot, and furthermore, had assumed responsibility for the lighting in that parking lot. There should be no dispute based on the standard that the court should have applied below, that the lights were not working on the night of the incident. Furthermore, there's no jurisdiction under the Federal Tort Claims Act. Here, we have a situation where the merits of the case are completely intertwined with the issue of jurisdiction. The court below ruled that Virginia's recreational use statute applied, and therefore, that in order to prevail on his claim under Virginia law, Mr. Lutfi was required to demonstrate gross negligence. We've briefed the issue of the application of the Virginia recreational use statute. I'm not going to go into it here. I think it's covered adequately in our briefs. For purposes of this argument, though, I will assume that Mr. Lutfi needed to have enough evidence in front of Judge Trengel below, so that in order to show that a reasonable juror could have found that the United States was grossly negligent in connection with their maintenance of the lighting. The court below dismissed for lack of subject matter jurisdiction. In his view, he felt that there was no evidence from which a reasonable juror could so find. What I'd like to discuss with the court today are three things. First, that Mr. Lutfi... Let me make sure that we're on the same wavelength. In the Frazier case, decided by the They gave a great... They gave a definition of defining what gross negligence is and what it's required under Virginia law to establish that. Do you take any difference with that? No, Your Honor. I think that if one reads Frazier and Chapman and the Lynchburg case, which was decided after Frazier and Chapman... Do you think this is a Chapman case or a Frazier case? I think it's a Chapman case because there's no dispute but that the United States was on notice of the fact that there was no lighting in that parking lot and did not take any action to either repair the lighting or provide some type of warning to users of that parking lot for many months. Well, it seems to be the distinction between Frazier and Chapman is that in Chapman, they made the purpose... person who was in repaired at that time because repairs weren't going to be done until the fall. That's correct. However, in city of Lynchburg and in Frazier, the Virginia Supreme Court said that a deliberate decision not to act is important evidence of gross negligence. But by no means did it say that it was a requirement in order to show gross negligence. And in fact, in Chapman, one of the reasons that the court upheld the dismissal below is the court felt that there was not sufficient evidence from which a jury could determine that the defendant knew of the hazard and failed to take action. The court said that rejected that argument because the jury would have to speculate as to whether or not there was actual knowledge. Here, there was actual knowledge and we know that from Mr. Carter's declaration. He says that... he says a few things. He says number one, that it was the responsibility of the United States to maintain the lighting in that parking lot. He says that he looked at a computer record and based on that computer record, there was only one notification that the lights were not working. Let me rephrase that. He says... he says another thing. He says that, and this is in the record, the joint appendix at page 134, that the Pentagon Force Protection Agency is responsible for monitoring the lights in that parking lot and, according to Mr. Carter, would have been, quote, immediately aware of lights malfunctioning. He then goes on to say that based on the computer records, there was only one recording of an intent to undertake repairs and that occurred in October of 2006. We know from the testimony of the plaintiff, which was submitted by affidavit and which for purposes of the motion below and today must be taken as true, that the lights were not functioning in November of 2006, over a month later when the incident took place and for a period of time thereafter. What about poll 18? The light on poll 18? The evidence as to the light on poll 18 is that it provided some lighting to that area of the parking lot that the plaintiff was injured in. However, Mr. Lutfi testified that there was no lighting whatsoever in the area that in which he was injured. I thought it was pretty much undisputed that poll 18, the light was operational on the night the plaintiff fell and it provided light to the parking lot, which could go to whether or not the government totally disregarded the need for lighting there. If poll 18 was providing some light to the parking lot. Well, the issue then would be whether poll 18 was providing sufficient light to the parking lot. But respectfully, what I believe, Judge Hamilton, you're referring to is Mr. Carter's conclusion based on his review of one page of these computer records referred to as the Maximo records, that he believed that that indicated that the lights were repaired on that very same day. However, as was pointed out below and as we pointed out in our papers, that particular document shows that the incident was not closed, and I'm reading from the joint appendix at page 157, the incident was not closed until March of 2007. Furthermore, and we also discussed this in our brief, the joint appendix at page 830 to 831, there is evidence that a contract to replace some lamps and ballasts was authorized on October 28, 2006, the day after the Maximo records indicate that there was a malfunction in the lighting. That particular work was not completed again until, I believe, June of 2007. And yet, again, according to Mr. Carter, day in and day out, the Pentagon Force Protection Service is immediately aware that these lights aren't working. I believe that this evidence taken together and applying the correct standard, which takes all of the allegations of Mr. Lutfi is true and resolves all inferences in his favor, a reasonable juror could conclude that if the United States knows day in and day out, week after week, month after month, that there is not adequate lighting in this parking lot, that that is sufficient to create a jury question as to gross negligence. And therefore, even if this court should agree that Judge Trenga got the application of the Virginia Recreational Use Statute correct, that this case should have gone to trial rather than being decided on summary judgment. Do you think the district court was proper in considering Mr. Carter's declaration? I believe that the court should have looked more closely at the inconsistencies in Mr. Carter's declaration. He was definitely an interested person. He was definitely an a proper foundation for his testimony. However, with respect to these Maximo computer records, which is the only source of his testimony that these lights were reported as out and repaired the very same day, there is no foundation as to that aspect of his testimony. You can't have it both ways, can you? Well, Your Honor, I believe that we can have it both ways in the sense that he had, let me pull out, if I may, his particular position was, he was in a supervisory position. I believe that he had, and he indicates that he has familiarity with the general functioning and the general responsibilities of the Air Force. However, when he gets into the nitty-gritty of what these particular documents say, I don't believe he had sufficient foundation for that testimony. And I believe that given this court's preference or disinclination to see litigants forfeit arguments because they're not raised with particularity below, I do believe that notwithstanding the issues that Mr. Luckfey was having with his attorneys, he did sufficiently raise these particular issues because he particularly identifies the documents attached to Mr. Carter's declaration which appear to be internally inconsistent. And so, Mike, were you counsel below? No, Your Honor. Otherwise, I wouldn't have characterized it that way. I believe, Your Honor, that the the court's two First, there's no evidence before the court at this time that supports plaintiff's speculation that the lights illuminating the parking lot at issue were out for a prolonged period of time prior to plaintiff's injury. With all due respect, Your Honor, given that Mr. Carter has said that if there was a report of an outage, or if the lights were out, it would have been discovered immediately and it would have been in these Maximo records, and if he only found one report, and that was a month prior to the incident, and if the plaintiff, on the date he was injured, testified that the lights were out, there is a reasonable inference that the lights were out for weeks prior to his incident. Furthermore, he says there is no evidence the United States knew of such an ongoing problem and made a deliberate decision not to address the issue before plaintiff's fall. I think that's correct in the sense that there saw in the Frazier case. However, again, Mr. Carter says that immediately, day in and day out, there would have been notice of this ongoing problem. Do you agree that the Virginia substantive law governs the merits of this case? I'm sorry, Your Honor? Do you agree that Virginia substantive law governs the merits of this Federal Tort Claims Act claim? Yes, yes, Your Honor, with because that was the location of the injury, so Virginia substance. How about if the Virginia's recreational use statute? Does that apply? I don't believe it applies, Your Honor, but I don't believe it's dispositive of this appeal because I think there's sufficient evidence to go to a jury on gross negligence. Well, that statute says that a Virginia landowner is shielded from premises liability as long as the landowner charges no fee to engage in sightseeing, gathering, or any other reasonable use on his land, and the landowner has not engaged in gross negligence or willful or malicious failure to guard or warn against dangerous conditions. You agree that that applies? No, Your Honor, but I'm willing to, but I don't believe it applies, Your Honor, because I don't believe that what Mr. Lutfi was doing constitutes sightseeing, and sightseeing is the only verb in the litany of verbs in the definition of recreational use which could apply in this situation. He was going to the Air Force Memorial in order to discuss with his, I believe it was his nephew, but in any event, it was a young man who was with him to discuss American values. I think, as we discussed in our brief, the Pelagian case, which looks to whether or not the protection from anything other than gross negligence was a primary motivator to the landowner for opening up to the public, I believe that that is the right analysis, and I don't believe that the Air Force, I don't believe that it could be said that the reason the Air Force opened up this memorial to the general public was because it was not, because of a concern or the lack of a concern that it would be liable for anything other than gross negligence or willful misconduct. Well, going to the sightseeing issue, and this will be on my time, the plaintiff contended that he was not sightseeing because he was, quote, presenting monuments portraying United States values to his young relative at the time of his injury, and because the memorial is a particularly inspirational monument. Yes, Your Honor. Now, if he had to show that to his nephew or whatever his kin was, so why wasn't that sightseeing? Well, sightseeing, I think, and this is borne out by the Hamilton case, sightseeing is visiting an area simply for purposes of viewing it, and I think that his purpose in being there was more than that. Just, I mean, Your Honor. It may have been more than that, and you're out of your time, but you can answer whatever question I ask you. The other thing that I would point out, Your Honor, I wouldn't agree that an Air Force, a member of the the armed services who was visiting that particular site, who may have had a colleague who was who was killed in battle, I don't think we would care or anybody would characterize that individual as sightseeing, and yet he's doing anything different. Thank you, Your Honor. May it please the Court. Your Honor, this court should affirm the District Court's application of the Virginia Recreational Use Statute to appellants FTCA claim and its dismissal of his claim because he cannot demonstrate the gross negligence required for liability under that statute. Additionally, Your Honors, this claim or find in the alternative that such application of 12b1 constituted harmless error. Initially, Your Honor, kind of dovetailing off of appellants argument there, the government's position is that the recreational use statute obviously does apply to his claims, and then he was sightseeing on that night. His arguments to the contrary are frankly just without merit in the present case. Accordingly, he was required to demonstrate gross negligence at the District Court. The District Court determined that under the Frazier standard, applied the language from Frazier, and determined that he could not demonstrate gross negligence, even accepting as true his version of events that night. The court accepted as true his version that the lights were out that night, said he couldn't establish gross negligence because he could not show how long those lights had indeed been out. It has to be noted that subsequently he moved for relief from that dismissal, and during that relief he did attack the motion for relief, the court essentially disregarded the Carter Declaration and took his version again, his version of events as true, that the lights were out and that they were out as of October when the Maximo records indicated that there was a problem. The court nonetheless determined there that there was not a tribal issue of gross negligence because all he had established was that the lights were out for a couple of weeks and that the had taken some action to recognize that deficiency and had indeed taken actions to rectify that deficiency, just that it hadn't it hadn't happened as quickly as he would have liked. In either event, Your Honor, with or without the Carter Declaration, he cannot establish gross negligence because he cannot show that there was a deliberate choice not to take some action as required by City of Lynchburg, or even under the Frazier and Chapman standards, he can't show a complete and utter disregard because if anything all the records demonstrate is that the government recognized there was there were problems and attempted to fix them. Accordingly, Your Honor, the district court correctly determined during in two different orders that he could not establish the gross negligence required for liability under the recreational use statute. Your Honor, regarding Appellant's argument concerning the application of Rule 12b1... In light of Frazier, Your Honor, in that case a young boy fell through a gap and he fell down 18 feet into the orchestra pit. In that case there was that there was an ordinance which required the city to take some actually designed to protect the opening where the child fell through and indeed a child had fallen previously through that so the city was on notice that it was possible and in that case... The government is on notice that if you don't adequately light your parking lot that people will fall? It seems to be the natural consequence of poor lighting. It's conceivable, Your Honor, that people could fall. Yes, Your Honor. Yes, Your Honor, that people could fall but indeed if the lights were out and the government recognized that the lights were out, the government took some action to rectify that situation as Plaintiff himself conceded that there was a contract that they contracted in an effort to prepare the lights. Two weeks they did it. It was out for two weeks. That's what you said. Under this record we could have inferenced that maybe it was two weeks. Well, the district court and it's ruling on his motion for relief from its dismissal recognized that even if it took his story at face value that the lights were out that night and they had been out for two weeks prior to that. Yes, Your Honor. Why as a matter of law, in those circumstances, that can't be gross negligence? Because there's no disregard of the... For gross negligence, Your Honor, under the case is cited to either a complete and utter disregard of a hazardous condition can be perceived as gross negligence or in the alternative a deliberate decision not to address the issue. Under either case, Your Honor, he can't show a deliberate decision not to address the issue because the issue was recognized and they contracted. And under either case, because the government recognized and recorded that lights were out, even without the Carter Declaration, it just shows that they recognized and recorded lights were out and contracted to repair those lights. It's just that the lights weren't repaired. Well, for example, it must be hundreds of people come through the memorial every day, right? Yes, Your Honor. And it's open every day except for holidays? Assuming that, Your Honor, yes, Your Honor. Well, that's for example, just the numbers, you could say hundreds of people times 14 going through a dark parking lot. That's a potential people. And it's really double because those hundreds go in and the same hundreds come out. So you could really say 28 times that if you want to do the math. That's a lot of people to be, again, I'm just for all emphases for the other side now. That's a whole, that's a lot of people traipsed in through the dark over the two-week period. How do we, how can you say as a matter of law, that's what we have to say, as a matter of law, that that can't be gross negligence under Virginia law? Your Honor, even again, that there was not a complete and utter disregard for that, for that condition and that there was no deliberate action taken. They didn't recognize there was that there was that condition that existed and then decide not to take action. Indeed, the contrary, Your Honor, if they recognize the decision that a condition existed, they decided to take action. And additionally, they can't demonstrate a complete and utter disregard of the hazardous condition because again, the lights were recorded, that the council, opposing council points out the fact that there's evidence in the joint appendix that they contracted, although there's no evidence of what lights they did contract for, that they contracted for lights to be repaired in the parking lot. So additionally, Your Honor, I don't believe that under either set of the circumstances, it demonstrates a complete and utter disregard for a hazardous condition as required by the law or in the alternative, a deliberate decision not to address a hazardous condition. Does that answer your question, Your Honor? Oh, no, no, I understand your position. Yes, sir. Just like him, you know. Great, very well. Regarding Appellant's 12B1 argument, Your Honors, the government's position is that Appellant waived this argument at the below court by not raising it during two rounds of dispositive motion briefing and he additionally didn't raise it during either of his post-dismissal requests for relief. Appellant contends that this court should infer that the motion was he raised that argument because he raised disputed issues of fact. So despite the fact that he not once used the phrase 12B1 or contested, expressly contested the district court's application, even if his disputed issues of fact, all that demonstrates is that the district court, he was given an opportunity to dispute issues of fact and that the district court then took those disputed issues of fact into consideration. Indeed, Your Honor, if application of 12B1 was in error, such error was harmless because the, as Appellant conceded in both his appellant brief and in his request for relief when he, at the below court, the order turned on whether there was a tribal issue of gross negligence and the district court determined there was no tribal issue of gross negligence. The district court employed Rule 56 summary judgment, language and standards. Indeed, if you took the rule, if you took the phrase 12B1 out of that motion that substituted the Rule 56, it would read identical to any other summary judgment dismissal. And lastly, Your Honor, the Kearns case, which Appellant points to about any issues raised by the Kearns case were obviated in the present case because Appellant, his case was dismissed only after extensive discovery at the district court. And again, all procedural safeguards or protections were afforded to the Appellant. He had extensive discovery. Indeed, the only abuse of the discovery process was Appellant himself. And indeed, that was so egregious that the magistrate judge recommended dismissal of his case with prejudice because he had abused the discovery process to such an extent. Accordingly, Your Honor, Appellee contends that this court should affirm the district court's application of the Virginia Recreational Use Statute and find that Appellant was unable to demonstrate gross negligence such that the district court's dismissal should be affirmed. Subject to your questions, Your Honors. Thank you, Mr. Creel. Thank you, sir. Thank you, Ron. Briefly, Appellant obviously does not have to demonstrate gross negligence. Appellant simply has to show that resolving all inferences in his favor and viewing the evidence in a light favorable to the Appellant that a reasonable juror could conclude under Virginia law that there was gross negligence. Let me just address two points. Deliberate action. The Lynchburg case, which we cite in our brief, again, states that deliberate or let's say deliberate inaction or a decision such as was made in Chapman not to repair is important evidence of gross negligence, but it is not dispositive. In Chapman, again, that was a case where there was a malfunctioning gate and the gate was configured in such a way that unfortunately a child wound up hanging herself when the gate swung past the boardwalk and she had her head caught in that little area. That is a relatively, it's not an entirely foreseeable event. But here we do have a very foreseeable event as Judge Gregory pointed out. And moreover, even if we assume that the government took some action by setting in motion the process to have these lights repaired, that doesn't answer the question as to whether they willfully continue to ignore this situation. Simply setting in motion the process to have a contract let, there were many other things that the government could have and should have done and on a daily basis did not do. And again, remember, they're immediately told when lights are not functioning per Mr. Carter. For instance, this particular lot was 10 spaces of hundreds in that area. And it would have been a simple matter while the government was waiting for these lights to be repaired to simply direct people to park elsewhere. I thought Mr. Carter's note said the lights had been repaired the same day of a reporter's being out. If you're going down that based on what Mr. Carter also said. He states in his affidavit that if the lights had been out, it would have been immediately noticed and reported. And if it had been immediately noticed and reported, it would have been recorded in those Maximo records. However, the plaintiff's testimony is true. The lights were out on the day that he was injured. And there's no other report in the Maximo records. Furthermore, again, if one looks at the that about which he frankly, Your Honor speculates, he doesn't he doesn't explain how he knows what it means. And he doesn't explain what it means. But those that document in and of itself. And again, Your Honor will find the relevant documentation on at pages 157 and 830 to 831 of the joint appendix that he's basing his his conclusion that these lights were repaired the very same day. In fact, according to him, some some 10 minutes after it was initially reported, because next to the because there's an entry next to the word comp. But he never says what the word comp means. The document otherwise says that this particular item was not closed until March 21st of 2007. So given the fact that there are these inherent contradictions in his evidence, I believe it was error for the court to conclude that no inference could be drawn in favor of Mr. Lutfi from the court of declaration and its attachments. And under those circumstances, it was error to deny Mr. Lutfi a trial. If panel doesn't have any other questions, I think I'm about done. Thank you very much.
judges: Roger L. Gregory, Stephanie D. Thacker, Clyde H. Hamilton